The last case to be argued is Lynch v. Massini Holdings. Before you begin, perhaps even before the clock, I take it you're representing yourself. I am, Your Honor. I have no doubt about your right to do that. Do you have any legal training yourself? None whatsoever. May it please the Court, Stephen Lynch, pro se. I have no doubt about your right to do that. My main goal, striking, dismissing this bankruptcy is an appeal that arises from the origins of this case. It was faked and rigged. The petitioners wanted my significant and valuable contractual rights, but they didn't want to pay for them. Repeatedly they tried to get rid of Lynch, and repeatedly they were thwarted in our agreed foreign jurisdiction. Still not willing to pay me, petitioners conceived a scheme to get from me for free through a U.S. court where they could not get from our commercial contract. Despite zero nexus to this country, petitioners, through serial violation of a pre-petition contract, manufactured a Potamkin bankruptcy in the United States. It was all form and no substance. To guarantee success, petitioners' plan needed a bankruptcy court with expansive views of its powers and reach, and the White Plains Courthouse fit that bill. In secret, in contravention of the rules, the petitioners filed the case there. From the filing, through the pendency of the bankruptcy — Why is it in contravention of the rules to file there rather than where? Manhattan? Manhattan. A case to be filed in Westchester County requires an address in Westchester County, and the debtor had no address in Westchester County. His address was in Luxembourg. That's Rule 902. Go ahead. I don't want to take up your time. I just want to know whether you're — Okay. From the filing, through the pendency of the bankruptcy, my counsel and I did not know that the single-judge courthouse had not been ministerially randomly assigned. With that lack of knowledge, I filed a series of motions to stop the bankruptcy, including a motion for dismissal on bad-faith grounds. The motions were all denied. The order denying bad-faith dismissal was not appealed. It was not appealed as bad-faith adjudication involves the Court's discretion — Were you represented by counsel at this time? I was not — You're talking about right now. You're telling me you're talking about right now. No. It was not appealed as bad-faith adjudication involves the Court's discretion, and through the date of any allowed appeal, I still lacked the knowledge that the judge had not been randomly assigned. Therefore, I had no basis to challenge his adjudication or the confirmation. Two months after I could have appealed bad-faith or objected to the confirmation, petitioners came clean. They wrote that they filed before the judge because he had, as they alleged, presided over related matters and because they thought I would want him. Both assertions are materially wrong and do not stand the most cursory consideration. Even if one judge was the appropriate judge to hear this matter, why arrange his adjudication in secret? The Wall Street Journal reports the practice as bankruptcy insiders, quote, avoiding a roll of the dice, end quote. The insiders are certain of the outcome. When that certainty is achieved by breaking the rules and in secret, it is unacceptable and must be set aside. And I've run out of time, so I will hold for rebuttal. All right. Just to clarify the answer to your question, I'd have to look at the exact dates of when the Jenner block, Richard Levin, was terminated on friendly terms and when the appeal date was passed of the ---- Let me, if, with ---- Yes, go ahead. ---- aside his permission, a matter of concern, I'm not sure it's a question, but a matter of concern is, as I'm afraid lawyers know, if there's a particular rule that was broken, there's a particular rule that matters. But the notion of so-called judge shopping, particularly in bankruptcy cases where people decide whether to go in such and such a jurisdiction because that's the only one where a particular judge is, or to file in New York City, New York rather than Delaware, or to file any case where they know who the judge is, assuming there's jurisdiction there, that's what I'm saying to a non-judge, a non-lawyer, that legal judge shopping may be rather miserable, but it's nothing ---- it's not necessarily, it is not in and of itself improper. I understand that. And I've educated myself since and I'm aware of some proposed legislation that might change that. I question none of that. It's simply that case where the rules were broken and the judge did not have jurisdiction and neither the other party nor the judge knew that the rules had been broken and that he did not have jurisdiction. The judge did not know. He did not know. And I can say for certain in terms of the timeline that when it was revealed that the filing had been done without disclosure, that was long past my representation status, long past the period when I was represented. All right. Thank you. We'll hear from the other side. May it please the Court. Mark McDermott on behalf of the Appellees Lapidem and Messini. For starters, in answer to your question, Your Honor, Mr. Lynch, when he was represented by counsel did, in fact, file the notice of appeal from Judge Drain's rulings denying the request to dismiss the case. It was later voluntarily withdrawn at the same time that counsel withdrew. With respect to the venue question. Was counsel involved in withdrawing the notice of appeal? I don't know for sure, but they were all done roughly on the same day, Your Honor. Okay. With respect to the venue matter, there is a rule on the timeliness of that sort of thing. It's normally done a month or so after a petition is filed. When this case was started, Mr. Lynch was represented by some very capable counsel who threw everything they had at us. Nobody talked about venue. Respectfully, I filed the case in front of Judge Drain because he had some experience with the Yukos bankruptcy case, and I wasn't smart enough to know at the time whether or not that knowledge would be helpful or important. What was the basis for filing in White Plains? There was some assets in White Plains that were in the form of retainer agreements from outside counsel. But be that as it may, that was the primary reason. I figured he had some familiarity with the case and it might actually help us. Otherwise, going to the merits of the appeal, I think that this Court can affirm Judge McMahon's detailed ruling on the grounds that really the three issues that Mr. Lynch waived or, excuse me, that he raised in his briefs, respectfully have been waived. Number one, on notice, I think it's fairly clear at this point, as Judge McMahon found, that he did, in fact, know of this confirmation hearing. He made a strategic decision not to participate. That also matters for his stern claims and the arguments that only a Federal district court could actually have entered a final order approving the plan of confirmation. The Supreme Court has said that a party can consent to an Article I judge entering a final order. However, one wants to define consent. I think that a proposal decision not to participate needs to be considered deemed consent or waiver or forfeiture. Last but not least on jurisdiction, as Judge McMahon found, Mr. Lynch actually put his breach claim squarely before Judge Drain. It was one of the many theories that he propounded in support of his motion to get the case dismissed. Judge Drain explicitly found, and we argued this at length, that he had core jurisdiction over that dispute. In fact, under Title 28, Section 1334a, bankruptcy courts have exclusive jurisdiction to deal with matters involving a petition, including challenges to the petition. We litigated this matter over two separate days. And as I said when I began, Judge Drain found that he had jurisdiction and also found that Mr. Lynch had not carried his burden of proving that there had been a breach of the shareholders' agreement. He filed the appeal, then dismissed that appeal. I think that the matter has raised judicata not only on the jurisdictional point, but actually on the breach of contract claims as well. I want to turn just a second to the merits, for lack of a better phrase, of the jurisdictional point that the Court determines to go that route. The exculpation clause here, which is pretty standard in my experience, all it really says is you don't get to go to another court to complain about things that the bankruptcy court actually dealt with. The exculpation clause of what? What document? It was in the plan of reorganization. Which was issued by the bankruptcy court? It's proposed by my clients, and the court affirmed it, confirmed it. But then it's therefore the force of the law. The imprimatur is on it. That's correct, Your Honor. That clause simply said, in sum and substance, that you don't get to go to another court and sue the Petitioners or other parties on account of things that the court dealt with, including the filing of the petition and confirmation of the plan. Both of those two matters are subject to the court's core jurisdiction. Every court has a jurisdiction to enforce its own orders. That's really all this exculpation clause was. So I think that by definition, an exculpation clause which is only in a plan of reorganization by definition is core. And Judge Drain was perfectly within his rights to confirm the plan, including that clause, on a final basis. Unless the Court has any questions, I'll stand on my papers. Thank you. We'll hear the rebuttal. Thank you. A minute and 13 seconds, I think. Respectfully, Mr. McDermott is wrong. There were no retainer agreements in White Plains. There were no retainer agreements in Manhattan. There were no retainer agreements in the Southern District of New York. They were in Akin Gump's client account in Washington, D.C. Respectfully also, Mr. McDermott is wrong. No notice of appeal on bad faith was filed. To his credit, I made the same mistake in my initial brief to this Court. I had mistakenly lumped them together with other appeals that had been filed in bankruptcy. My breach claims invoke 16 clauses of the contract. Eleven of those clauses were never mentioned in the bankruptcy court, three in passing, two only vis-à-vis the loans, and I was not a party to the loans. Notice is not only actual knowledge, it is timely knowledge. In the District Court's decision, page 12, Judge McMahon refers to my actual knowledge. She never says that I have timely knowledge, and the precedents that she cites are timely, GAC and others. Why didn't you continue with the appeal? Why did you voluntarily withdraw the appeal? The bad faith appeal was never filed. The other appeal, the appeal with respect to the core, whether the claims were in the core subject matter jurisdiction, it was an appeal and then it was withdrawn, right? At that time, the bad faith hearing was on January 27th, and I lost that. That and the bankruptcy was entered. With that consequence, I lost my office, my phone, my, most importantly, my indemnity against hundreds of millions of dollars in the Netherlands and in England, all of which I had to represent and have represented myself since successfully in. And so I had a torrential amount of issues to deal with, and I understood that the Southern District of New York, I did have actual knowledge of all of that. I checked Pacer twice a day for the last four years. I have actual knowledge of everything. I don't have timely knowledge. I needed, I don't know if I had 28 days, would I have come to a different conclusion? I don't know. But the facts of the matter are I had a matter of days. When you're sitting in Washington, excuse me, Moscow, as a pro se party, you have to file your papers. You have to file papers in hard form. That requires DHL of minimum four days if nothing goes wrong. One of the days in the shortened period was a Russian holiday as well. The effect was that I had five, seven days in which to respond to all of this as a pro se party. Did I answer your question? Thank you. Anything else? You can finish up if you like. Oh, I did have the closing remarks. Thank you, Your Honor. You can give your closing remarks. Yes. They're very short. Yes. Thank you. The petitioner's revelations caused me concern about justice in my case, and timely I appealed the denial of my motion for reconsideration and inter alia invoked FRCP 60 through FRBP 9024. Dismissing the bankruptcy corrects a manifest injustice and protects the appearance of impartiality of the U.S. judiciary. It also prevents abuse of the U.S. court system by, in plain English, sending the message that shenanigans of the type behind this faked case and manufactured nexus and rigged assignment are well short of the jurisprudence standards of this great nation. To allow this bankruptcy to stand is an open invitation to the world's majority shareholders, wherever they may be. Hire Skadden Arps, move or even allege to have moved a relative pittance to Washington, D.C., or rent a mailbox in White Plains, file there in secret, and guaranteed outcome. Goodbye, minority shareholder and your pesky rights. Thank you. Thank you. We'll reserve the decision. The final case is on submission. Accordingly, I'll ask. Thank you. Thank you. Thank you.